UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| EMILY L. ALLEN-WARD, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-00227-JDL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| Performing the Duties and Functions | ) | |
| Not Reserved to the Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in determining her mental residual functional capacity ("RFC") and in assessing her subjective symptoms. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 11) at 4-10. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2017, Finding 1, Record at 12; that she had the severe impairments of obesity, bilateral carpal tunnel syndrome, degenerative disc disease of the cervical and lumbar spine, an affective disorder, and an anxiety disorder, in combination, Finding 3, *id.* at 12; that she had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except for the following limitations and restrictions: she needed a sit/stand option on an hourly basis for three to five minutes while still doing job functions, she could occasionally perform fine and gross manipulation, she could occasionally climb ramps, stairs, ladders, ropes, or scaffolds, she could occasionally stoop, kneel, crouch, or crawl, she should avoid respiratory irritants, with no vibrations, no hazards, and no sloping irregular surfaces, she could, on a sustained competitive basis, understand and remember simple instructions, she could use judgment to make simple work-related decisions, she could respond appropriately to supervisors, coworkers, and usual work situations with no more than frequent public contact, and she could adapt to changes in an ordinary work setting, Finding 5, *id.* at 15; that, considering her age (33 years old, defined as a younger individual, on her alleged disability onset date, August 31, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 20-21; and that she, therefore, had not been disabled from August 31, 2013, through the date of the decision, April 29, 2016, Finding 11, *id.* at 22. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. The ALJ's Mental RFC Determination

#### 1. Background

Agency examining consultant A. J. Butler, Ed.D., performed a psychological consultative evaluation of the plaintiff on April 16, 2014. *See* Record at 360. Dr. Butler diagnosed her with mood disorder, generalized anxiety disorder, by report, attention deficit hyperactivity disorder, and features of post-traumatic stress disorder, and assessed her with a GAF, or Global Assessment of Functioning, score of 55.[2] *See id.* at 366. Dr. Butler provided the following Medical Source Statement:

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social,

3

> In regard to work-related activities, [the plaintiff] would be able to understand tasks consistent with Low Average to Average ability. She would likely have difficulty with abstract reasoning and need enhanced verbal mediation. She would need multiple repetition and reinforcement of verbal information in order to acquire, retain and utilize it. [The plaintiff] has observable attention and concentration difficulties and is apt to have significant difficulty sustaining prolonged task focus. She is apt to interact socially adequately in a familiar setting, but to have difficulty interacting socially in a large group or public setting due to heightened anxiety. She would likely have problems with adaptation given her mood lability and her focus on her physical health problems and pain condition.

*Id.*

Two agency nonexamining consultants assessed the plaintiff's mental RFC with the benefit of review of the Butler report: Peter G. Allen, Ph.D., on initial review, and Thomas Knox, Ph.D., on reconsideration. *See id.* at 107, 110-11, 115-17, 127-28, 131-32, 135-37. As the plaintiff observes, *see* Statement of Errors at 2 n.1, the ALJ did not mention the Allen opinion, *see* Record at 12-20. Hence, I focus on that of Dr. Knox.

Dr. Knox found, in relevant part, that the plaintiff had no understanding and memory limitations, explaining that her understanding and memory were within normal limits. *See id.* at 136. He also found, in relevant part, that she had sustained concentration and persistence limitations, as a result of which she was, *inter alia*, not significantly limited in her ability to carry out very short and simple instructions but markedly limited in her ability to carry out detailed instructions. *See id.* He explained: "Variable concentration due to pain & mood [disorder] but

---

and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* (boldface omitted). In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores. *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."). Nonetheless, I assess the supportability of the ALJ's decision based on the evidence available to him at that time.

able to manage simple routine tasks (not complex) for normal workday/week, within her physical limits." *Id*.

Dr. Knox summarized Dr. Butler's Medical Source Statement as indicating that the plaintiff was "apt to have significant difficulty with prolonged tasks, can interact socially adequately, difficulty in [large] groups or public setting, needs repetition and reinforcement on info." *Id.* at 128. He gave the Butler opinion "great weight" because it was "consistent with" the medical evidence of record. *Id.* at 133.

The ALJ summarized and analyzed both the Butler report and the Knox opinion. *See id.* at 17-20. He detailed the history and daily activities that the plaintiff had reported to Dr. Butler, *see id*. at 17-18, and summarized her opinion as follows:

> Dr. Butler gave the opinion that the [plaintiff] would be able to understand work-related tasks consistent with her low average to average ability. Dr. Butler also gave the opinion that the [plaintiff] is apt to have significant difficulty sustaining prolonged task focus, but she could socialize adequately in a familiar setting. Finally, Dr. Butler gave the opinion that the [plaintiff]'s GAF score is 55, indicating she has moderate mental symptoms.

*Id*. at 18 (citations omitted). He explained:

> I give the opinion of Dr. Butler, a neutral consultative evaluator[,] great weight here to show that the [plaintiff]'s GAF score is 55, indicating that [she] has moderate mental symptoms. Finally, Dr. Butler pointed out the [plaintiff]'s varied daily activities in this case.
>
> ***
>
> I give the opinion of Dr. Knox, a state agency mental consultant[,] great weight here to show that the [plaintiff] has variable concentration due to her pain and mood disorder, but she is capable of managing simple routine tasks during a normal workday/workweek.

*Id*. at 19-20 (citations omitted).

Finally, the ALJ noted, in explaining why his assessed RFC was "well-supported by the greater weight of the medical and opinion evidence in this case[,]" that treating nurse practitioner

5

Christine C. Moulton, FNP, had observed in February 2016 that the plaintiff had "appropriate judgment, good insight, with recent and remote memory intact, and appropriate affect." *Id.* at 20 (citing Record at 562); *see also id*. at 19 (summarizing Moulton records).

As both the plaintiff and the commissioner agree, *see* Statement of Errors at 6; Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 14) at 8, the ALJ's RFC formulation is consistent with that of Dr. Knox, *compare* Finding 5, Record at 15 *with id.* at 136-37.

### 2. The Plaintiff's Argument

The plaintiff asserts that "[t]he ALJ committed reversible error when he failed to evaluate the specific limitation that the Plaintiff would need multiple repetition and reinforcement of verbal information in order to acquire, retain, and utilize it." Statement of Errors at 7. At oral argument, her counsel contended that, while both Dr. Knox and the ALJ purported to give the Butler opinion great weight, there were breaks in the chain of information when (i) Dr. Knox inexplicably assessed no limitation in the plaintiff's memory and understanding, and (ii) the ALJ failed to provide an accurate summary of the Butler opinion, omitting any mention of Dr. Butler's repetition/reinforcement finding.

The plaintiff argues that the omitted limitation was buttressed by objective evidence, *see id*. at 3, including Dr. Butler's (i) finding on mental status examination that, while she "could recall six digits forward and three digits in reverse[,]" "suggest[ing] that her immediate recall is intact, . . . her ability to transfer information into short-term memory storage is significantly less well-developed[,]" Record at 364, and (ii) notation of a Working Memory Index score of 80 on WAIS-IV testing, "which fell within the lower limits of the Low Average range and represents an area of qualitative relative weakness within her cognitive processing of information[,]" *id*. at 365-66.

6

The plaintiff analogizes this case to *Parker v. Colvin*, No. 1:15-cv-00446-JHR, 2016 WL 4994997 (D. Me. Sept. 19, 2016), *see* Statement of Errors at 6-7, in which this court rejected the commissioner's argument that an ALJ's conceded error in failing to evaluate the opinion of an agency examining consultant, Edward Quinn, Ph.D., was harmless because he had relied on the RFC opinion of an agency nonexamining consultant, Brian Stahl, Ph.D., who had reviewed the Quinn report, *see Parker*, 2016 WL 4994997, at *4-6. The court deemed reliance on the Stahl opinion misplaced in circumstances in which, (i) despite purporting to give the Quinn opinion great weight, Dr. Stahl had neither captured all of Dr. Quinn's findings regarding the claimant's social functioning nor explained why he did not do so, (ii) there was a tension between Dr. Stahl's own finding that the claimant had moderate limitations in her ability to deal with supervisors and the omission of any corresponding limitation from his RFC opinion, and (iii) the ALJ had inexplicably omitted one of Dr. Stahl's assessed social functioning limitations despite purporting to give the Stahl opinion significant weight. *See id*. at *5-6.

She contends that the error is not harmless because the need to have instructions repeated time and again would undermine her ability to understand, carry out, and remember even simple instructions, which, per Social Security Ruling 85-15 ("SSR 85-15"), would render her unemployable, and because the vocational expert ("VE") present at her hearing testified that there would be no work for an individual incapable of understanding, remembering, and carrying out short, simple demonstration work. *See* Statement of Errors at 7; SSR 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 347 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions[.]"); Record at 69-70 (VE testimony).

7

However, as the commissioner rejoins, *see* Opposition at 6 & n.6, this is not the first time this court has grappled with the question of whether an ALJ committed reversible error in omitting a nearly identical finding by the same agency examining consultant.

In *Winders v. Astrue*, No. 1:11-cv-325-JAW, 2012 WL 3137140 (D. Me. July 10, 2012) (rec. dec. *aff'd*, Aug. 1, 2012), Dr. Butler found, in relevant part, that a claimant had a "need for multiple reinforcements for new learning[.]" *Winders*, 2012 WL 3137140, at *4 (citation and internal quotation marks omitted). An agency nonexamining consultant, Lewis F. Lester, Ph.D., reviewed the Butler report and specifically acknowledged her "multiple reinforcements" finding, "but found that the plaintiff's ability to understand and remember very short and simple instructions was not significantly limited." *Id.* at *5 (citation and internal quotation marks omitted). The ALJ assigned little weight to the Butler and Lester opinions on the faulty basis that, when he asked the claimant's counsel at hearing to pose a hypothetical question to the VE including all factors that the claimant was alleging, her counsel omitted mental limitations. *See id*. at *3-4. However, the ALJ nonetheless included mental limitations in his RFC determination. *See id*. at *4. The court held that, although the question was "a close one," *id*. at *5, the claimant had failed to demonstrate harmful error, noting:

> It appears . . . that [the Butler] limitations are in fact addressed by the RFC's limitations. The [claimant] does not suggest any specific limitation that should have been included as a result of Dr. Butler's findings that was not included. How, for example, should the need for "multiple reinforcements for new learning" . . . be addressed other than by restrictions to simple instructions, simple tasks, and only occasional, routine changes in the workplace? Indeed, the limitations adopted in the RFC are close to those recommended by Dr. Lester, the state-agency reviewing psychologist, who had the benefit of Dr. Butler's report.

8

*Id.* at *4 (citation and footnote omitted).[3] *See also id.* at *5 (observing that Dr. Lester had found no significant limitation in the claimant's ability to understand and remember very short and simple instructions, and there did not appear to be "any other category on the Psychiatric Review Technique forms filled out by Dr. Lester that could be construed to address the 'new learning' limitation").

In *Thompson v. Colvin*, Civil No. 1:12-cv-369-DBH, 2013 WL 5724134 (D. Me. Oct. 21, 2013), Dr. Butler opined that a claimant was "likely to have significant difficulty with the retention and recall of verbal information" and "would need enhanced explanation, [repetition] and reinforcement of verbal information in order to acquire and recall it." *Thompson*, 2013 WL 5724134, at *5 (quoting from Dr. Butler's findings contained in the record). The claimant complained that, "despite purporting to adopt Dr. Butler's findings," the ALJ had omitted this material restriction, which a VE present at her hearing had testified would cause "difficulty performing all of the jobs identified in response to the [ALJ]'s hypothetical question." *Id.*

This court found remand warranted, noting that, although the ALJ had purported to give Dr. Butler's opinion great weight and had specifically noted her finding that the claimant would need enhanced explanation and reinforcement of verbal information, he had omitted that limitation from both his mental RFC and hypothetical question to the VE. *See id.* at *6. The court rejected the commissioner's argument that, as in *Winders*, any error was harmless because the ALJ had adopted the RFC opinions of two agency nonexamining consultants (Drs. Stahl and Lester) who had the benefit of review of the Butler report. *See id.* at *6-8. It distinguished *Winders* in that:

---

[3] The claimant also faulted the ALJ for disregarding the Lester opinion, noting that the ALJ had not specifically stated that he was adopting any of the Lester limitations. *See Winders*, 2012 WL 3137140, at *4 n.4. However, the court observed that "the test on this appeal is whether the [ALJ]'s challenged conclusions are supported by substantial evidence, not whether a different manner of presentation would make it easier for a claimant to address those conclusions on appeal." *Id.*

9

1. Neither Dr. Stahl nor Dr. Lester had "specifically acknowledged the limitation at issue[,]" and it was "not self-evident that [their] RFC assessments, or the RFC finding of the [ALJ], encompass[ed] Dr. Butler's finding of a need for enhanced explanation, repetition, and reinforcement of verbal information in order to acquire and recall it." *Id.* at *7.

2. The ALJ had "purported to give great weight to the Butler opinion after specifically noting the limitation at issue." *Id.* at *8.

3. "[M]ost importantly," the VE had "testified that the restriction would compromise an individual's ability to perform [the] jobs" on which the ALJ had relied. *Id.*

The court found that, in those circumstances, "absent either an express rejection by the [ALJ] of the Butler finding at issue or an explanation as to how his RFC determination reflected it, his RFC determination [was] unsupported by substantial evidence." *Id.*

Finally, in *Hatt v. Soc. Sec. Admin. Comm'r*, No. 1:13-cv-00335-NT, 2014 WL 4411600 (D. Me. Sept. 5, 2014), Dr. Butler found that a claimant "would likely need multiple repetitions and reinforcements in order to acquire, retain, and recall verbal learning." *Hatt*, 2014 WL 4411600, at *4 (citation and internal quotation marks omitted). The court rejected the claimant's argument for remand on the basis of the ALJ's omission of this limitation, explaining:

> The [ALJ] stated that the limitations included in his RFC address Dr. Butler's proposed cognitive and social limitations. Even if this assertion is incorrect, the [claimant] . . . proffers no explanation of the necessary change in the outcome of her application if this alleged error were rectified.
>
> On the showing made, the plaintiff is not entitled to remand based on the [ALJ]'s treatment of Dr. Butler's opinions.

*Id.* (footnotes, citation, and internal punctuation omitted).

The court also rejected the claimant's bid for remand on the basis that the ALJ had wrongly relied on the RFC opinion of an agency nonexamining consultant, Brenda Sawyer, Ph.D., who

10

"did not explicitly accept or reject Dr. Butler's opinions[.]" *Id*. The court deemed it "clear that Dr. Sawyer considered Dr. Butler's opinions, which she summarize[d] in her 2010 report." *Id*. It added that neither *Winders* nor *Thompson* "requires remand whenever a state-agency evaluator fails to expressly adopt or reject each of the opinions of other evaluators as to physical or mental limitations imposed on the claimant's ability to perform work-related functions." *Id*. It distinguished *Thompson* on the basis that, whereas the VE in *Thompson* testified that the Butler restriction would compromise the claimant's ability to perform all relevant jobs, the VE in *Hatt* testified that the Butler restriction at issue would eliminate only one of the three jobs identified. *See id*.

*Winders*, *Thompson*, and *Hatt*, thus, address the same point raised here: whether the ALJ committed reversible error in omitting a nearly identical limitation by Dr. Butler. The question is whether this case more closely aligns with *Winders* and *Hatt* or with *Thompson*.

In her brief, and through her counsel at oral argument, the commissioner contended that this case is indistinguishable from *Winders* and *Hatt* in that the ALJ adopted the RFC opinion of Dr. Knox, who clearly considered the Butler report, expressly noting the finding at issue, and distinguishable from *Thompson*, in which neither Dr. Stahl nor Dr. Knox expressly noted the finding at issue. *See* Opposition at 6-11. She further distinguished this case from *Thompson* on the basis that, here, the ALJ did not purport to give the Butler opinion in its entirety great weight after specifically noting the repetition/reinforcement finding. *See id*. at 10-11. Rather, he gave it great weight for the discrete purpose of showing that the plaintiff had a GAF score of 55, consistent with moderate symptoms, in addition to incorporating Dr. Butler's description of the plaintiff's varied daily activities. *See id*.

11

The plaintiff's counsel rejoined that *Winders* is distinguishable because, in that case, the Butler limitation was not communicated to the VE, while in this case, as in *Thompson*, the VE testified that the limitation at issue, as rephrased by the ALJ, would preclude the jobs on which the ALJ relied. He distinguished *Hatt* on the bases that, there, the ALJ purported to take all of the Butler limitations into consideration, and the VE did not testify that the limitation at issue would preclude all jobs.

For several reasons, I am persuaded that the commissioner has the better argument.

First, unlike in *Thompson*, the ALJ was clear that he gave weight to the Butler opinion only insofar as she assessed a GAF score of 55. *See* Record at 19. Thus, there is no internal inconsistency in the ALJ's handling of the finding at issue. Indeed, the ALJ emphasized the finding of NP Moulton that the plaintiff had, *inter alia*, intact recent and remote memory. *See id*. at 19-20.

Second, even assuming *arguendo* that the ALJ erred in failing to discuss or adopt Dr. Butler's reinforcement/repetition finding, any error is harmless. As in *Winders*, the ALJ relied on the RFC opinion of an agency nonexamining consultant, Dr. Knox, who had not only taken the Butler opinion into consideration but also specifically noted the finding at issue. *See id*. at 128, 133. In determining that, despite variable concentration due to her pain and mood disorder, the plaintiff was able to manage simple, routine tasks during a normal workday/workweek, *see id*. at 136, Dr. Knox presumably took the Butler finding into account.

Indeed, as counsel for the commissioner observed at oral argument, Dr. Knox's role was to review the available record, including any examining consultants' reports, and craft an RFC opinion to aid the ALJ in assessing the plaintiff's RFC. *See* 20 C.F.R. §§ 404.1513a(b)(1),

12

416.913(b)(1) ("[O]ur Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.").

The plaintiff invites the court to draw that curtain back and conclude that Dr. Knox failed to incorporate the Butler limitation because he inexplicably deemed the plaintiff's understanding and memory to be within normal limits, assessing no limitations in that category, despite Dr. Butler's objective findings on examination and testing that the plaintiff had memory difficulties. *See* Statement of Errors at 6-7.

As the commissioner points out, however, *see* Opposition at 9 n.8, the court would be obliged to interpret raw medical evidence and substitute its judgment for that of Dr. Knox to conclude that his mental RFC opinion does not adequately reflect the Butler limitation, *see, e.g.*, *Preston v. Colvin*, Civil No. 2:13-CV-321-DBH, 2014 WL 5410290, at *6 (D. Me. Oct. 21, 2014) (declining to "find conflict" between the reports of a medical expert and relevant medical records because doing so "would require medical knowledge which neither the plaintiff, her attorney, nor the court possesses"). I decline to do so in these circumstances.

As in *Winders* and *Hatt*, it is not self-evident that the ALJ's restriction to understanding and remembering simple instructions on a sustained, competitive basis, *see* Finding 5, Record at 15, fails to capture Dr. Butler's repetition/reinforcement finding, which Dr. Knox expressly acknowledged, and the plaintiff identifies no specific limitation that the ALJ should have included based on the need for repeated instructions. Dr. Butler did not state that the plaintiff would need multiple repetitions for even basic, simple instructions. *See id.* at 366. Indeed, as the ALJ noted, "Dr. Butler gave the opinion that the [plaintiff] would be able to understand work-related tasks consistent with her low average to average ability." *Id.* at 18 (citing *id.* at 366).

13

*Parker* does not require a different outcome. In this case, unlike in *Parker*, there are no fatal breaks in the information chain. The ALJ did not fail to evaluate Dr. Butler's opinion or to assess an RFC consistent with that of Dr. Knox, and there is no internal tension in Dr. Knox's own findings. *Compare Parker*, 2016 WL 4994997, at *5-6. While there is a seeming tension between Dr. Butler's findings of memory deficits and Dr. Knox's conclusion that the plaintiff's memory was within normal limits, there is, as explained above, no self-evident tension between Dr. Butler's repetition/reinforcement finding and Dr. Knox's (or the ALJ's) limitation to simple tasks.[4]

Because the ALJ did not err in assessing the Butler opinion and, in any event, any error in failing to discuss or adopt Dr. Butler's reinforcement/repetition finding is harmless by virtue of the ALJ's adoption of the Knox RFC opinion, remand is unwarranted on the basis of this point of error.[5]

### B. The ALJ'S Evaluation of the Plaintiff's Subjective Symptoms

The plaintiff also argues that the ALJ erred in assessing her credibility, in violation of Social Security Ruling 96-7p ("SSR 96-7p"). *See* Statement of Errors at 8-10. As the commissioner points out, *see* Opposition at 13-14, SSR 96-7p was superseded effective March 28, 2016, by Social Security Ruling 16-3p ("SSR 16-3p"), which applies to the instant April 29, 2016, decision, *see* Social Security Ruling 16-3p Titles II And XVI: Evaluation Of Symptoms In Disability Claims, 82 Fed. Reg. 49462, 49462-63 (Oct. 25, 2017). Hence, and although both sides

---

[4] The plaintiff also contends that the ALJ erred in giving great weight to Dr. Butler's GAF score assessment without explaining whether that score had any impact on the formulation of his RFC. *See* Statement of Errors at 7-8. This point is without merit. As the commissioner rejoins, *see* Opposition at 11-12, the ALJ explained that he relied on the GAF score for the proposition that the plaintiff had moderate mental symptoms, *see* Record at 19, not for particular aspects of her RFC.

[5] Because I find no reversible error in the ALJ's formulation of the plaintiff's mental RFC, I need not and do not reach the plaintiff's further argument that she has shown harmful error based on SSR 85-15 and the testimony of the VE at hearing that there would be no work for an individual incapable of understanding, remembering, and carrying out short, simple demonstration work. *See* Statement of Errors at 7.

agreed at oral argument that the choice of ruling was not outcome-determinative in these circumstances, I apply SSR 16-3p.

The ALJ found that, although the plaintiff's "medically determinable impairments could reasonably be expected to cause some of her alleged symptoms[,]" her "statements concerning the intensity, persistence and limiting effects of her symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" Record at 16. He explained:

> At the hearing, the [plaintiff] said she can drive a car and she has no problems with foot controls. [She] said she is still smoking cigarettes, and she is opiate dependent. [She] alleged she still has carpal tunnel symptoms despite her release surgeries, and she alleged neck/back pain. Yet, [she] manages to get her two minor children off to school in the morning, and she visits her father for an hour five times a week. [She] was recommended to diet and exercise, with weight loss to help her pain. [She] said the sensation in her left hand is a lot better than before her surgery, she was happy with the outcome of her left wrist surgery, and she stated the sensation in her right wrist and fingers had increased. On exam, [she] had negative straight leg raising, she was able to get up on her toes and heels, and she was able to do a shallow squat. [She] can do her daily stuff easily while on medication. [She] had appropriate judgment, good insight, with recent and remote memory intact, and appropriate affect.

*Id.* at 20 (citations omitted). In summarizing the Butler report, he further noted, in relevant part:

> The [plaintiff] said her boyfriend does the housework, she drives and shops very limitedly, and she watches television. [She] reads a weekly newspaper, she listens to the radio, she use a computer for Facebook, E-mail, and to help her children with their homework. [She] said she gets up in the morning with her children and she makes coffee, she smokes, watches television, she gets bathed and dressed, and she drives to her father's house. [She] said she talks with her father, she goes to the post office, she returns home to meet her children after school, and she helps them with their homework. [She] sees her friends once a week and they visit back and forth.

*Id.* at 18 (citations omitted).

The plaintiff contends that the ALJ erred in relying on her activities of daily living, which are not necessarily an indicator of a claimant's ability to perform substantial gainful activity, and in failing to articulate the amount of weight that he gave to those activities, the reasons for that

weight, and the way in which he viewed her activities as inconsistent with Dr. Butler's repetition/reinforcement finding. *See* Statement of Errors at 9-10. I find no error.

With respect to the first point, while it is true that "a claimant's ability to perform activities of daily living does not, in itself, constitute positive evidence of his or her RFC," *Drew v. Astrue*, Civil No. 09-363-B-W, 2010 WL 1946335, at *4 n.4 (D. Me. May 12, 2010) (rec. dec., *aff'd* June 4, 2010), the ALJ considered those activities not as positive evidence of the plaintiff's RFC but, rather, for purposes of evaluating whether her alleged symptoms were consistent with the record evidence, *see* Record at 16, 20.

This was permissible pursuant to SSR 96-7p and remains permissible pursuant to SSR 16-3p. *See, e.g. Crocker v. Astrue*, No. 07-220-P-S, 2008 WL 2775980, at *7 (D. Me. June 30, 2008) (rec. dec., *aff'd* July 23, 2008) (ALJ supportably deemed claimant's description of his activity level "contradicted by evidence of more wide-ranging activities[,]" which was "a permissible credibility finding" pursuant to SSR 96-7p, rather than improperly concluding that claimant's "ability to perform certain activities of daily living, in itself, translated into a finding that he retained the RFC for light work[,]" having "adopted expert medical reports so indicating"); SSR 16-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 671 (noting that factors to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include daily activities).

With respect to the second point, apart from SSR 16-3p's elimination of the use of the term "credibility," which is not at issue here, both SSR 16-3p and SSR 96-7p set forth a similar standard for ALJs' articulation of their findings regarding claimants' subjective symptoms. *Compare* SSR 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 136 ("The . . . decision must contain specific reasons for the finding on credibility, supported by

the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.") *with* SSR 16-3p at 674 ("The . . . decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.") (boldface omitted).

The ALJ's discussion here meets this standard. He explained that he found the plaintiff's alleged physical symptoms inconsistent with other evidence of record that included her activities of daily living. *See* Record at 16, 20. The plaintiff does not contend that this observation is unsupported by the underlying record evidence. *See* Statement of Errors at 9-10. With respect to her alleged mental symptoms, the ALJ noted that she "had appropriate judgment, good insight, with recent and remote memory intact, and appropriate affect." Record at 20. For that proposition, he cited a record of NP Moulton, which, indeed, reflects these findings. *See id.* at 20, 562.

As discussed above, in highlighting the Moulton findings and in stating that he gave great weight to Dr. Butler's opinion that the plaintiff had a GAF score of 55, reflecting moderate symptoms, the ALJ made reasonably clear that he did not credit Dr. Butler's repetition/reinforcement finding. Nonetheless, as also discussed above, to the extent that he erred in failing either to discuss or adopt Dr. Butler's repetition/reinforcement finding, any error was harmless because the ALJ relied on the RFC opinion of Dr. Knox.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

## NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 23rd day of April, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge